## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| AVIASUPPORT INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action |
| | ) | File No. _____ |
| DELTA AIRLINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### COMPLAINT

COMES NOW AviaSupport International, Inc. ("ASI"), Plaintiff in the above-styled action, and for its Complaint against Defendant Delta Airlines, Inc., ("Delta"), respectfully shows this Court the following:

### THE PARTIES

1.    Plaintiff AviaSupport International, Inc. is a Florida corporation, with its principal place of business in Florida.

2.    Defendant Delta Air Lines, Inc. is a Delaware corporation, with its principal place of business in Georgia. Delta may be served care of Corporation Service Company at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

### JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant   to

28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000,

exclusive of interest and costs, and is between citizens of different states.

4.     Venue lies in the Northern District of Georgia pursuant to 28 U.S.C. §

1391(b)(1) because Defendant resides in this district.

### RELEVANT FACTS

#### *The Parties and the Agreement*

5.     ASI is an airline maintenance company that offers the repair and

overhaul services of its commercial partners to airline markets worldwide.

6.     Delta is a global airline company. Delta TechOps ("DTO") is a

division of Delta that provides aviation maintenance services to Delta's fleet and

third-party airlines.

7.     Effective January 27, 2004, Delta and ASI entered into a Technical

Sales Representative Agreement (the "Agreement").[1] By virtue of the Agreement,

ASI agreed to serve as Defendant's exclusive sales representative for DTO's

aircraft powerplant maintenance services ("Services") in Mexico, Chile, Colombia,

Brazil, El Salvador, and Argentina ("Territory").   The Agreement also   appointed

---

[1] A true and correct copy of the Agreement is attached hereto as Exhibit 1. The Agreement superseded a prior Sales Representative Agreement between Delta and ASI dated March 1, 2002.  (*See* Agreement § 1(e).)

ASI as Defendant's exclusive sales representative in Germany with relation to Air Berlin's CFM56-7 fleet and in the United States with relation to Jetscape's CFM56-3 fleet.

8.      The Agreement further provides that, without Delta's advance written consent, ASI could not serve as sales representative for any other airlines with regard to the Services, both inside or outside the Territory.  (*See* Agreement § 1(a).)

9.      Pursuant to the Agreement, ASI agreed, *inter alia*, to use its best efforts to promote the sale and use of the Services within the Territory and to diligently solicit and secure orders for DTO.  (*See* Agreement § 5.)

### *ASI's Compensation Structure under Agreement*

10.     In consideration for ASI's performance of its obligations, Delta agreed to pay ASI's commissions based on Delta's **Sales** (as defined in the Agreement) of the Services in the Territory. The Agreement defines "Sales" as follows:

> "Sales" shall equal the net amount of the invoice (after any discount) for the sale of a Service in the Territory and shall not include any taxes, shipping charges, credits or allowances against the invoice price whenever made, including warranty work, concessions or adjustments made by Delta. The commission paid per customer in the assigned Territory shall be as defined in Exhibit B attached hereto and expressly incorporated herein, or as my otherwise be agreed upon in writing on a case by case

basis. Sales are subject to the payment of a commission to [ASI] whether related orders in the Territory are made through [ASI] or placed directly with Delta. Commissions shall be paid within thirty days after the end of the month in which the invoice for the specific Service was paid. The amounts stated on Exhibit B constitute the full and complete compensation to be paid by Delta to [ASI] for its services and any expenses incurred by [ASI] in providing the service under this Agreement.

(*See* Agreement § 6(a).).

11.    Exhibit B to the Agreement sets forth the percentage of Sales (per net invoice) to which ASI was entitled to as a commission, with varying percentages for the various types of engine and component repairs contemplated by the parties:

| | |
|---|---|
| JT8D-200 series (Time and Materials) | 3.5% of net invoice |
| All other engines (Time and Materials) | 4.0% of net invoice |
| **All engines (Power by the Hour or Flat Rate)** | **2.5% of net invoice** |
| Life Limited Parts (LLPs) for Power by the Hour or Flat Rate | 4.0% of net invoice |
| Component Repairs (Time and Materials) | 5.0% of net invoice |
| Component Repairs (Power by the Hour or Flat Rate) | 4.0% of net invoice |
| Landing Gear (Time and Materials) | 4.0% of net invoice |
| **Landing Gear (Power by the Hour or Flat Rate)** | **2.5%** of net invoice |
| Program Integrator Support Packages | 2.5% of net invoice |
| Air Berlin CFM56-7 Engine (Time and Materials) | 1.75% of net invoice |
| Air Berlin CFM56-7 (Power by the Hour or Flat Rate) | 1.75% of net invoice |
| Jetscape CFM56-3 engine (Time and Material) | **2% of net invoice** |
| All APUs (Time and Materials) | 4.0% of net invoice |
| All APUs (Power by the Hour or Flat Rate) | 2.5% of net invoice |
| All Airframe "C" and "D" Checks | 2.5% of net invoice |
| TechOps owned stand-alone engine leasing* | 2.5% of daily fees |

\* Non-exclusive support for stand alone lease engines only. Engine leases offered in conjunction with engine overhaul services shall not be eligible for compensation.

12.    Exhibit B to the Agreement reflected DTO and ASI understanding that modifications of pricing structures were possible during the course of   DTO's

customer contracts, and provided for ASI to continue receiving commissions regularly of such modifications.

13.    Exhibit B to the Agreement also contains a per engine cap on ASI's compensation for engine services performed by Delta:

| | | |
|---|---|---|
| a. | P&W JT8D-200 to -219 | $45,000 cap per net invoice |
| b. | P&W 2000 | $60,000 cap per net invoice |
| c. | P&W 4000 | $70,000 cap per net invoice |

| | | |
|---|---|---|
| d. | CFM56-3 | $50,000 cap per net invoice |
| e. | CF6-80A Series | $70,000 cap per net invoice |
| f. | CFM56-7 | $50,000 cap per net invoice |
| g. | CF6-80C Series | $70,000 cap per net invoice |
| h. | Air Berlin | $20,000 cap per net invoice |
| i. | Jetscape | $25,000 cap per net invoice |

14.    Exhibit B further provides that the foregoing per engine caps "**shall be reviewed and escalated annually on January 1st of each year on a customer specific basis, based upon the average increase realized pursuant to such customer's agreement that is supported by ASI during the previous year.**" (*See* Agreement at Ex. B.)  (emphasis added)

### *Term and Termination of the Agreement*

15.    The Agreement's original term extended three years and one month from the effective date, i.e., until February 27, 2007. (*See* Agreement § 4.)

16.    Following the end of the original term, the Agreement provided that the Agreement term may be extended by consecutive one-year periods, upon notice

of intent to extend the term by a party and consent to such extension by the other party.  (*See* Agreement § 4.)

17.    Each party, however, possessed the right to terminate the Agreement for convenience with ninety (90) days written notice to the other party. (*See* Agreement § 4.)

18.    Subparagraph (d) of Section 4 of the Agreement provides that any termination of the Agreement would not affect rights or obligations arising prior to the termination:

> (d) Upon any termination of this Agreement, neither party shall be under any obligation to the other except as expressly set forth herein; provided, any termination shall not affect rights and obligations arising or incurred hereunder prior to the effective date of such termination.

(*See* Agreement § 4(d).)

### *2007Amendment*

19.    On February 26, 2007, Defendant and ASI executed an amendment to the Agreement ("2007 Amendment").[2]

20.    The 2007 Amendment extended the term of the Agreement through February 28, 2012.  (*See* 2007 Amendment § 1.)

---

[2]A true and correct copy of the 2007 Amendment is attached hereto as Exhibit "2".

21.    The 2007 Amendment also amended Exhibit B to the Agreement to restate and revise the per engine caps set forth in Exhibit B. (*See*   2007 Amendment § 4.)

### *ASI Successful Efforts to Promote Delta's DTO Division within Territory*

22.    From 2000-2013, ASI's marketing efforts directly resulted in Delta obtaining maintenance service contracts with several profitable customers for more than a decade, generating more than one billion dollars in revenue for DTO.

23.    In addition to its marketing efforts, from 2000-2013  ASI  assisted DTO in all phases of customer support within the Territory, including without limitation invoicing and bill collections.

24.    On multiple occasions, Delta officials commended ASI for its successful efforts in support of Delta's DTO division.

### *Delta Terminates ASI*

25.    Although the 2007 Amendment extended the Agreement through February 28, 2012, from February 28, 2012 - December 18, 2012, the parties mutually agreed to continue exercising the responsibilities and obligations under the Agreement.

26.   On December 18, 2012, Delta informed ASI, despite no fault or breach by ASI, that it intended to terminate the Agreement for convenience, effective March 17, 2013 ("Termination Date").[3]

27.   After the termination, Delta correctly recognized its continuing obligation to pay ASI commissions arising from those customer contracts entered into prior to the Termination Date. To this end, on May 20, 2013, Delta transmitted ASI a letter (the "Separation Letter") confirming there were four active third party customer contracts as of the Termination Date (the "Contracts"):

| Delta Contract Number | Contract Name | Contract Effective Date | Contract Expiration Date | Description of Services Provided |
|---|---|---|---|---|
| 92225 | Aerovias De Mexico S.A. de C.V CFM56-7 Engine Repair | 7/10/2006 | 7/10/2016 | • CFM56-7 Engine Repair<br>• CFM Engine LRUs |
| 96080 | LAN Airlines S.A. Engine Service Agreement | 7/17/2007 | Open | • PW4000 Series Engine Repair |
| 103116 | LAN Airlines S.A. Technical Service Agreement | 7/24/2009 | Open | • B767 Winglet Modifications |
| 107856 | VRG Linhas Aereas S.A Reciprocal Service Agreement | 12/06/2010 | 12/06/2015 | • CFM56-7 Engine Repair<br>• B737 Components & CFM LRUs |

(*See* Separation Letter.)[4]

---

[3] Delta's December 18, 2012 Letter is attached hereto as Exhibit 3.

[4] The Separation Letter is attached hereto as Exhibit 4.

28.    In the Separation Letter, Delta stated the following concerning Delta's post-termination obligations:

> Delta's sole remaining obligations to pay commissions, and ASI's sole remaining obligation to support Delta, are for these four Contracts. In accordance with Section 13 of the Agreement, Delta will continue compensating ASI under Section 6 (a), (b), and (c) for each Contract as long as it remains under execution ….

(*See* Separation Letter at 1.)

29.    As a condition of Delta's continued compensation under the Agreement, Delta required that ASI continue to abide by several contractual obligations in the Agreement, including the non-compete provision set forth in Section 12 of the Agreement.  (*See* Separation Letter at 1-2.)

30.    ASI has fully complied with the post-termination obligations set forth in Delta's Separation Letter.

31.    From 2013-July 1, 2015, Delta continued to pay ASI commissions for Sales arising from the completion of Services for the customers identified in the Separation Letter.

### *Delta Agrees to Provide Enhanced Monthly Statement of Account*

32.    Section 7 of the Agreement requires Delta to supply ASI weekly status reports detailing customer products undergoing repair.  (*See* Agreement § 7.)

- 9 -

33.     During the term of the Agreement, Delta would provide ASI bi-weekly status reports and a monthly statement. This approach permitted both parties to monitor pending payments from customers. ASI would invoice Delta for its commissions once Delta's related invoices to third-party customers were paid.

34.     On June 5, 2014, in response to a request from ASI, Delta agreed to provide ASI an enhanced statement of account ("Statement") every month. Specifically, Delta agreed to the following:

> The Statement will be mailed to ASI on the first day of every month (commencing on July 1, 2014), or the next working day if the first day falls over a weekend or a Delta holiday, and will include the following information:
>
> 1.     A summary of all customer engines -by serial number- inducted by Delta during the preceding month
>
> 2.     A summary of all customer engines -by serial number- produced by Delta during the preceding month, as well as the original invoice amount and number if available. If an invoice was not generated by the Statement's issue date, then the invoice amount and number will be reflected on the subsequent month's Statement.
>
> 3.     A summary of final amounts paid by customer -by invoice number- during the preceding month. Final amounts paid by a customer may differ from the original invoice amount due to mutually agreed upon billing adjustments between Delta and the customer. Delta will not be providing a detailed explanation for any differences between the original and final amounts paid.

- 10 -

> As a matter of record, the aforementioned Statement will only be applicable for the contracts and associated amendments that were active in ASI's [Separation Letter] and will cease on the termination date of the last contract.

(June 5, 2014 Letter to ASI.)[5]

### *Delta Attempts to Terminate ASI's Commissions for Aerovias de Mexico S.A. de C.V. Customer Contract*

35.     One of the four active customer Contracts as of the Termination Date was the Aerovias de Mexico S.A. de C.V. ("AMX") Engine Repair Agreement, dated July 10, 2006 (Delta Contract No. 92225 ("AMX Contract").[6] Per  its original terms, the AMX Contract did not expire until July 10, 2016.

36.     On July 1, 2015, Delta sent ASI correspondence seeking to prematurely terminate a portion of ASI's commissions arising from the AMX Contract. In the July 1, 2015 letter, Delta informed ASI that Delta and AMX had agreed "to remove all engines from the [AMX Contract] for power by the hour services" and convert the servicing of the AMX engines to a "time and materials arrangement."  (*See* July 1, 2015 Letter.)[7]

37.     The Agreement contemplates Delta paying ASI commissions for engine repairs, regardless of whether Delta billed the customer for such work on a

---

[5] The June 5, 2014 Letter is attached hereto as Exhibit 5.

[6] A true and correct copy of the AMX Contract is attached hereto as Exhibit 6.

[7] The July 1, 2015 Letter is attached hereto as Exhibit 7.

power by the hour basis or via a time and materials arrangement. (Agreement at Ex. B.)

38.    As of the filing of this Complaint, Delta has not provided ASI any records evidencing the specific terms of the "time and materials arrangement" concerning the servicing of AMX engines, despite ASI's multiple requests.

39.    Solely because of the purported change in billing terms associated with Delta's repair of the AMX engines, Delta wrongfully claimed that ASI would "no longer earn commissions under the AMX Contract for services performed on engines." Delta, however, agreed to continue to pay ASI commissions earned under the AMX Contract for Delta's repair of AMX components.  (*See* July 1, 2015 Letter.)

40.    From July 1, 2015 - July 10, 2016, Delta failed to pay ASI commissions on those invoices arising from Delta's repair of AMX engines, although (1) the AMX Contract remained under execution; and (2) Delta's invoices for repair of AMX engines constituted Sales under the Agreement.

41.    Delta also failed to pay ASI commissions arising from Delta's repair of AMX component parts from April 2016 thru the expiration of the AMX Contract.

## *Extension of Brazil GOL Contract*

42.     The VRG Linhas Aereas S.A. ("Brazil GOL") Reciprocal Service Agreement between Delta and Brazil GOL (Delta Contract Number 107856 ("GOL Contract")) was one of the four Customer Contracts active as of the Termination Date.[8] Per its original terms, the GOL Contract was due to expire on December 6, 2015.

43.     Upon information and belief, Delta and Brazil GOL mutually agreed to extend the term of the GOL Contract prior to the original December 6, 2015 expiration date.

44.     Delta failed to inform ASI of the extension of the GOL Contract and/or any repair work Delta performed during this extension.

45.     Delta has not paid ASI any commissions during the extension of the GOL Contract, although, upon information and belief, the GOL Contract remains under execution as of the filing of this Complaint.

46.     Despite multiple requests from ASI, Delta has not provided ASI the GOL extension or any records evidencing the Sales obtained pursuant to the GOL extension.

---

[8] A true and correct copy of the GOL Contract is attached hereto as Exhibit 8.

### *Delta Fails to Review and/or Increase Engine Cap Amounts Since 2012*

47.    The Agreement provides that the per engine invoice caps set forth in Exhibit B to the Agreement would be "reviewed and escalated annually on January 1st of each year on a customer specific basis, based upon the average increase realized pursuant to such customer's agreement that is supported by ASI during the previous year." (Agreement at Ex. B.)

48.    Throughout the term of the Agreement, the per engine invoice caps were regularly increased pursuant to Exhibit B of the Agreement.

49.    Since 2012, Delta has failed to review and increase the per engine invoice caps as required by the Agreement.

50.    All conditions precedent to the filing of this Complaint have been performed, satisfied, waived, or excused.

## COUNT I - BREACH OF AGREEMENT

51.    Plaintiffs hereby incorporate the allegations contained in ¶¶ 1-50 of the Complaint as if fully set forth herein.

52.    The Agreement is a binding and enforceable contract between Delta and ASI.

53.    Delta breached the Agreement by, among other things, failing to pay ASI commissions owed under Agreement arising from Delta's invoices     for

Services provided AMX and Brazil GOL while the AMX and GOL Contracts "remained under execution."

54.     Delta further breached the Agreement by failing to annually review and increase the per engine caps applicable to ASI's commissions from 2013-2016.

55.     Delta also breached the Agreement by failing to provide ASI status reports pursuant to the Agreement.

56.     As a result of Delta's breaches of the Agreement, ASI has suffered damages in excess of $2,000,000.00.

## COUNT II - BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

57.     ASI hereby incorporates the allegations contained in ¶¶ 1-56 of the Complaint as if fully set forth herein.

58.     By failing to inform ASI of the specific terms of Delta's "time and materials arrangement" with AMX and/or provide ASI the terms of the extension of the GOL Contract, despite multiple requests from ASI, Delta breached the duty of good faith and fair dealing imposed by Georgia law on every party to a contract.

59.     Delta's breaches of its duty of good faith and fair dealing have damaged ASI in an amount to be proven at trial.

## COUNT III - ACCOUNTING

60.     ASI hereby incorporates the allegations contained in ¶¶ 1-59 of the Complaint as if fully set forth herein.

61.    Pursuant to Section 7 of the Agreement, Delta is required to supply ASI weekly status reports detailing customer products undergoing repair.

62.    In its June 5, 2014 letter to ASI, Delta agreed to provide the enhanced Statements on the first business day of each month until the expiration of the final Customer contract.

63.    Despite multiple requests from ASI, Delta has not provided monthly Statements and/or weekly status reports to ASI concerning Delta's invoicing of AMX and/or Brazil GOL for Services performed while the Contracts remained under execution.

64.    As a result, ASI does not possess all of the information necessary to calculate all of the amounts Delta owes ASI.

65.    An accounting is necessary to determine the specific amount Delta owes ASI under the Agreement.

## COUNT IV - ATTORNEYS' FEES

66.    ASI hereby incorporates the allegations contained in ¶¶ 1-65 of the Complaint as if fully set forth herein.

67.    By its actions and conduct described herein, Delta has acted in bad faith, has been stubbornly litigious and has caused ASI unnecessary trouble and expense, entitling ASI to recover its costs and expenses of litigation, including attorneys' fees pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff ASI prays that this Court:

(a)     Enter judgment in favor of Plaintiff ASI against Defendant Delta on each count of this Complaint, in an amount to be determined at trial, but not less than $2,000,000.00;

(b)     Order Defendant Delta to render a full accounting of all information and documents related to Delta's Sales for Services performed while the Contracts remained under execution;

(c)     Award Plaintiff ASI interest as allowed by law;

(d)     Award Plaintiff ASI its reasonable attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11; and

(e)     Grant Plaintiff ASI such other and further relief as this Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff ASI hereby demands a trial by jury in the above-captioned action of all issues triable by jury.

[*signatures on following page*]

Respectfully submitted this 19th day of December, 2016.

**TOWNSEND & LOCKETT, LLC**

By:_____
     Steven J. Pritchett
     Georgia Bar No. 142309
     Tennell Lockett
     Georgia Bar No. 455547
     Travis Townsend
     Georgia Bar No. 715061

     *Attorneys for AviaSupport International, Inc.*

1401 Peachtree St. NE
Suite 500
Atlanta, Georgia
(404) 870-8501 (office)
(404) 870-8502 (facsimile)
tennell.lockett@townsendlockett.com
travis.townsend@townsendlockett.com