**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **AVIASUPPORT INTERNATIONAL, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. File: |
| v. ) | 1:16-cv-04660-RWS |
| ) | |
| **DELTA AIRLINES, INC.,** ) | |
| ) | |
| Defendant. ) | |

<u>**PLAINTIFF AVIASUPPORT INTERNATIONAL, INC.'S RESPONSE IN
OPPOSITION TO DEFENDANT DELTA AIR LINES, INC.'S MOTION TO
DISMISS**</u>

COMES NOW, Plaintiff AviaSupport International, Inc. ("ASI"), by and

through its counsel, and files this response seeking an order denying Defendant

Delta Air Lines, Inc.'s Motion to Dismiss ("Motion") and requiring Delta to submit

a substantive Answer to ASI's Complaint.[1]

## I.    STATEMENT OF THE CASE

Delta seeks dismissal on the grounds that ASI has failed to state a claim upon

which relief can be granted as to each claim ASI set forth in the Complaint, namely

Count I (Breach of Agreement); Count II (Breach of Duty of Good Faith and Fair

Dealing), Count III (Accounting), and Count IV (Attorney Fees).

The core premise underlying Delta's Motion is the governing contract between the parties "does not obligate Delta to pay [ASI] commissions on arrangements Delta developed after terminating the Agreement and as to which [ASI] was not in any way involved." (Motion at 2.) This premise, and hence Delta's Motion, fails for two primary reasons. First, ASI's Complaint seeks contractually owed commissions on, as Delta puts it, customer "arrangements" (i.e., Delta third-party customer contracts) for customers which Delta and ASI secured prior to termination of the Agreement, and only with instrumental support from ASI. Second, the purported new arrangements touted in Delta's Motion are merely altered billing methods and contract extensions expressly contemplated in the original contracts secured during ASI's tenure as Delta's sale representative. Delta's abject refusal to pay ASI for commissions to which ASI is entitled are material breaches of the Agreement. For these reasons, the Court should reject Delta's motion to dismiss ASI's principal claim for breach of contract. Moreover, ASI's Complaint adequately alleges sufficient facts to support its derivative claims, Counts II-IV of the Complaint. Specifically, ASI alleges Delta abjectly refused to provide information concerning the third-party customer contracts for which ASI seeks commissions under the Agreement, despite multiple requests from ASI.

These allegations present a sufficient factual basis for the Court to reject Delta's motion to dismiss Counts II-IV and to permit full discovery concerning same.

## II. STATEMENT OF RELEVANT FACTS[2]

### A. The ASI/Delta Agreement

Around 1999, Delta contracted with ASI to initiate a marketing plan to introduce Delta to the aircraft maintenance market in Latin America. In 2004, Delta and ASI entered into a new contract, the Technical Sales Representative Agreement (the "Agreement"),[3] to continue Delta and ASI's mutual effort to expand Delta's customer base in Latin America. (Compl., ¶ 7.) By virtue of the Agreement, ASI served as Delta's exclusive sales representative for Delta's aircraft powerplant maintenance services ("Services") in, *inter alia*, much of Latin America ("Territory"). (*Id.*) ASI's agreed to use its best efforts to promote the sale and use of the Services within the Territory and to diligently solicit and secure orders for Delta. (*Id.*, 10.)

#### 1. *ASI's Commissions under the Agreement*

In return for exclusive rights to ASI's sales representative services, Delta agreed to pay ASI commissions based on Delta's Sales of the Services in the Territory, regardless of the method by which Delta contracted for or invoiced the Services.[4] (*See* Agreement, § 6(a) ("Sales are subject to payment of commission to

[ASI] whether related orders in territory are made through [ASI] or directly with Delta."). Exhibit B to the Agreement sets forth the percentage of Sales (per net invoice) to which ASI was entitled to as a commission, with varying percentages for the various types of engine and component repairs contemplated by the parties and the method by which Delta invoiced the customer for such repairs. (*See* Agreement, Ex. B.) Specifically, Exhibit B contained different commission percentages for repairs invoiced on a time and materials basis versus repairs invoiced on power by the hour rate. (*Id*.) Exhibit B's shifting commission amounts reflected Delta and ASI's understanding that modifications of pricing structures were possible during the course of Delta's customer contracts, and provided for ASI to continue receiving commissions regardless of such pricing structures. (*Id*.) To provide ASI visibility regarding commissionable events, the Agreement provides required Delta to "supply [ASI] a status report of customer products undergoing repair." (*Id*., § 7.)

Contrary to Delta's contention, ASI's commissions did not fluctuate based on its role and significance in assisting Delta's efforts to increase engine maintenance revenue.[5] (Mot. at 3.) ASI negotiated for its commissions to be tied to any *Sales* Delta receives from a customer Delta initially obtained during the term of the Agreement. (Agreement, §13.) Under the commission structure in the Agreement,

once ASI assisted Delta in obtaining a customer within the Territory, ASI would be entitled to commissions on all Sales to such customer so long as such customer's contracts remained "under execution." (*Id.*) This approach meant ASI, along with Delta, bore the risk of early termination of Delta's customer contracts, but also shared in potential rewards arising from the extension and/or expansion of the original customer contracts with Delta. (Compl., ¶¶ 10-12; Agreement, § 13.)

2.  *Annual Escalation of Per Engine Caps*

The Agreement contains a per engine cap on ASI's commissions for engine services performed by Delta. (Agreement, Ex. B.) As Delta's customer contracts regularly contained annual escalations in the per engine service charges, ASI negotiated for an annual increase in the per engine caps, on a customer-specific basis, in the Agreement.[6] (*Id.*) This annual increase is memorialized in Exhibit B of the Agreement, which provides that the per engine caps "shall be reviewed and escalated annually on January 1st of each year on a customer specific basis, based upon the average increase realized pursuant to such customer's agreement that is supported by ASI during the previous year." (*Id.*) During the course of the Agreement, Delta annually increased the per engine caps based on the corresponding increase of the per engine charge Delta billed to the customer.

(Compl., ¶ 48.)  These annual increases were not conditioned upon whether ASI provided a requisite level of support on the underlying customer contracts.  (*Id.*)  So long as the underlying customer contract was entered into during the term of the Agreement, Delta would annually increase the per engine cap on ASI's commissions for such customer.  (*Id.*)

### 3. *Agreement Contemplated Post-Termination Commissions for ASI*

The Agreement also provided ASI would receive post-termination commissions. (Agreement, § 13.)  Section 13 of the Agreement provides ASI, after termination of the Agreement, would remain entitled to ongoing commissions on any Sales to any Delta customers jointly secured during the term of the Agreement "as long as the contracts remain under execution."  (*Id.*)  Two customers which ASI and Delta jointly secured during the term of the Agreement, Aerovias De Mexico S.A. de C.V. ("AMX") and VRG Linhas Aereas S.A. ("Brazil GOL"),  are integral to the present dispute. (Compl., ¶¶ 35, 42.)

### B. **The AMX Contract**

On July 10, 2006, Delta and AMX entered into the Engine Repair Agreement (Delta Contract No. 92225 ("AMX Contract"), a long-term contract for the repair of engine and engine component parts.[7]  Per its original terms, the AMX Contract did

not expire until July 10, 2016, but provided that the AMX Contract could be renewed or extended by mutual written agreement. (AMX Contract, § 2.1.)

Originally, the AMX Contract called for Delta billing AMX for CFM56-7 engine and engine component repairs on a power by the hour ("MBH") basis. (AMX Contract, § 3.) The MBH approach to billing calculates an invoice amount by multiplying the total flight hours for each customer engine since its prior maintenance visit by an agreed upon rate. (AMX Contract, § 3.1.) Because the MBH approach represented new territory for both Delta and AMX (as well as ASI) concerning maintenance for the CFM56-7 engine, the AMX Contract contemplated altering the billing method during the term of the contract. (*See* AMX Contract §§ 2.5 (economic hardship provision permitting change in contract terms if Delta experiences economic hardship during term of Agreement); 3(B) (outlining time and materials rate schedule for various services, including engine repairs); and 9 (most favored customer provision).

In 2012, prior to Delta's termination of the Agreement, AMX began questioning the value of the MBH approach to engine repairs and requested a change to the T&M approach for Delta's billings under the AMX Contract. Ultimately, in 2015, Delta and AMX agreed to terms to convert billing for engine

repairs to the T&M approach.  (Compl., ¶ 36.)

## C.     The GOL Contract

On December 6, 2010, Delta and Brazil GOL entered into the Reciprocal Service Agreement (Delta Contract Number 107856 ("GOL Contract")).[8]  The GOL Contract had an initial term of five years, with an option to extend the term an additional five years.  (GOL Contract, § 3.1.)  Prior to the expiration of the original five-year term, Delta and Brazil GOL mutually agreed to extend the term of the GOL Contract.   (*See* Mot. at 8 (confirming Delta and Brazil GOL extended GOL Contract).)

## D.     Delta Terminates ASI, but Requests that ASI Continue to Abide by Non-Compete Provision.

On December 18, 2012, Delta informed ASI that it intended to terminate the Agreement, for convenience, effective March 17, 2013 ("Termination Date").  (Compl., ¶ 26.)  As referenced above, Section 13 of the Agreement requires Delta to continue to pay ASI commissions in accordance with Section 6 and Exhibit B of the Agreement for third-party Delta customers that ASI and Delta jointly secured during the term of the Agreement.[9] (Agreement, § 13.)   After terminating the Agreement, Delta correctly recognized its continuing obligation to pay ASI commissions arising from those customer contracts entered into prior to the

Termination Date. (Compl., ¶ 27.) To this end, on May 20, 2013, Delta transmitted ASI a letter (the "Separation Letter") confirming that it would pay ASI post-termination commissions on four active third-party customer contracts as of the Termination Date.[10] (Compl., Ex. 4.) Two of the four customer contracts identified in the Separation Letter were the AMX and GOL Contracts.[11] (*Id.*) Pursuant to Section 13, Delta stated that it would condition its post-termination commissions on ASI continuing to abide by Sections 10-12 and 14-19 of the Agreement until the last customer contract expires or is terminated. (*Id.*)[12] Section 12 of the Agreement obliged ASI to, *inter alia*, not compete with Delta "during the term of the Agreement."

ASI responded to the Separation Letter by a letter dated June 18, 2013 ("Response Letter"). (Mot., Ex. A.) In the Response Letter, ASI correctly reminded Delta that Section 12's non-compete restriction was expressly limited to the term of the Agreement.[13] Nonetheless, ASI proposed agreeing to a post-termination non-compete (assuming the parties could agree on duration and scope for the post-termination non-compete) in exchange for Delta *assuring* ASI that it would not seek to avoid paying post-termination commissions owed for the active contracts identified in the Separation Letter through the expiration date for those contracts.

(Resp. Ltr.) ASI requested that this assurance include "any contract extensions that may occur and new contract that Delta and the customer may choose to enter into for similar services in the event of any early termination of an existing contract between Delta and the customer." (Resp. Ltr. at 1.) ASI's request for assurances was not an attempt to expand Delta post-termination obligations, but instead was an attempt to: (1) confirm Delta's view of its existing post-termination obligations under the Agreement; and (2) avoid a future dispute over post-termination commissions in the event of a contract extension or side arrangement with an existing customer Delta obtained with ASI's assistance. (*Id.*)

In any event, ASI never wavered from its understanding of Delta's post-termination obligations under the Agreement and contrary to Delta's assertions, neither the Separation Letter nor the Response Letter altered Delta's obligations under the Agreement. (*See* Agreement, § 20 (provisions of Agreement prevail over any conflicting instructions from Delta).)

## E.     Delta Attempts to Minimize and/or Eliminate ASI's Post-Termination Commissions on the AMX and Brazil GOL Contracts.

On July 1, 2015, Delta sent ASI a letter seeking to prematurely terminate ASI's commissions arising from the AMX Contract. (Compl., ¶ 36.) In the July 1, 2015 letter, Delta informed ASI that Delta and AMX had agreed to terms to convert

billing for engines under the AMX Contract from MBH to T&M.[14] (*Id.*, Ex. 6.) Solely because of the purported change in billing terms associated with Delta's repair of the AMX engines, Delta wrongfully claimed ASI would "no longer earn commissions under the AMX Contract for services performed on engines." (*Id.*)

From July 1, 2015 - July 10, 2016, Delta failed to pay ASI commissions on those invoices arising from Delta's repair of AMX engines, although (1) the AMX Contract remained under execution; and (2) Delta's invoices for repair of AMX engines constituted a Sale, and thus a commissionable event, under the Agreement. (Compl., ¶ 36.) In addition to failing to pay ASI post-termination commissions for the AMX Contract, Delta failed to pay ASI commissions on the extension of the GOL Contract. (Compl., ¶ 43.)

Since terminating the Agreement, Delta has not expanded its customer base in the Territory. AMX and Brazil GOL are Delta's two remaining contracted for aviation maintenance customers in the Territory.

## III.    ARGUMENT AND CITATION OF LEGAL AUTHORITY

A.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to

relief."  To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim that is not merely conceivable, but rather, is plausible. *Twombly*, 550 U.S. at 570.  At the motion to dismiss stage, the court accepts all the well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004). Based upon these foregoing principles when reviewing a Rule 12(b)(6) motion, ASI has adequately pled the claims set forth in Counts I-IV of the Complaint, and therefore, Plaintiff respectfully requests that Delta's Motion to Dismiss be denied.

      B. <u>ASI's Complaint Adequately Alleges the Elements of a Breach of Contract Claim</u>

Count I of ASI's Complaint, ASI's breach of contract claim, contains sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Norton v. Budget Rent A Car System, Inc.*, 705 S.E.2d 305, 306 (Ga. Ct. App. 2010). Count I contains each of the requisite elements for a cognizable breach of contract claim for unpaid post-termination commissions arising from AMX and Brazil GOL and Delta's wilful failure to provide status reports required under the Agreement. (*See* Compl. 52

(identifying grounds for ASI's standing to make claim), 53-55 (alleged contract breaches); and 56 (alleged damages).)

Where there is an unambiguous contract and no material disputes concerning the application of such contract to the facts, a court may resolve a breach of contract claim at the motion to dismiss stage. *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d. 1303, 1321 (N.D. Ga. 2014). If, however, an "[a]greement is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract," the Court should deny a motion to dismiss for failure to state a claim. *See Novoneuron, Inc. v. Addiction Research Inst., Inc.*, 326 Fed. Appx. 505, 508-509 (11th Cir. 2009) (per curiam) (trial court erred in granting motion to dismiss for failure to state a claim when disputed contract was susceptible to two different interpretations, each one of which was reasonably inferred from the terms of the contract); see also *Ralls Corp.*, 27 F. Supp. 3d at 1326-1327 (denying motion to dismiss contract claim in part because of court's finding material contract terms ambiguous).

The crux of Delta's attack on Count I is its claim that ASI seeks commissions for so-called "new arrangements" with third-party customers AMX and Brazil GOL, which were purportedly entered into following the termination of the

Agreement. As shown below, ASI has pled sufficient facts in its Complaint to support its breach of contract claim.

### 1. Delta's Refusal to Pay ASI Commissions for AMX Sales Breached the Agreement.

On July 10, 2006, Delta and AMX entered into the AMX Contract, a long-term contract for the repair of engine and engine component parts. (Compl., Ex. 6.) The AMX Contract contained an initial term of ten (10) years, i.e., thru July 10, 2016, with the possibility of extensions. (*Id.*, § 2.1.) On July 1, 2015, immediately prior to the final year of the AMX Contract, Delta wrongfully excluded ASI from contracted-for commissions on the AMX Contract, on the grounds that Delta and AMX "had agreed to remove all engines from the [AMX Contract] for power by the hour services" to a "time and materials arrangement."[15] (Compl., ¶ 11.) The Complaint alleges this exclusion breached the Agreement for two primary reasons.[16] First, the Complaint alleges Delta's purported "new arrangement" with AMX was merely a change in billing terms contemplated by Delta, ASI, and AMX at the inception of the AMX Contract. (Compl., ¶ 37; *see also* AMX Contract, §§ 3.1 (reflecting possibility of billing Services on time & materials basis); and 9 (most favored customer provision contemplates different billing terms for AMX). Second, the Agreement expressly provided ASI would continue to receive commissions for

14

Sales from Delta customers jointly secured during the term of the Agreement "as long as the contracts remain under execution."[17] (*See* Agreement, § 6(a) (commissions payable to ASI on all Sales, whether orders made through ASI or Delta).)

Delta, in the Motion, does not claim that its engine repair services for AMX (from July 1, 2015-July 10, 2016) did not constitute Sales as defined in the Agreement, nor does Delta argue the AMX Contract did not "remain under execution" from July 1, 2015-July 10, 2016. Rather, Delta seeks dismissal of ASI's contract claim solely on the basis of a generalized reference to a new arrangement with "substantially revised terms." (Mot. at 7.) Delta fails, however, to describe whether this new arrangement constituted a new contract with AMX or revised terms to the AMX Contract. Further, Delta fails to produce any documents reflecting the terms of the purportedly new arrangement with AMX.[18]

Clearly, Delta disagrees with the factual bases of ASI's breach of contract claim. But, accepting ASI's factual allegations as true, as proper at this stage, Delta's Motion fails to show ASI's Complaint lacks any element of a properly pled breach of contract claim. Moreover, further discovery is necessary to investigate a number of issues concerning ASI's breach of contract claim, including the specific

terms of Delta's T&M "arrangement" with AMX and the conduct of the parties under the Agreement prior to Delta's alleged breaches in 2015.

**2.    ASI Properly Alleges A Breach of Contract Claim Arising from Delta's Refusal to Pay Commissions for the Brazil GOL Extension.**

ASI's breach of contract claim is also premised on Delta's refusal to pay ASI commissions on an extension of the Brazil GOL Contract. Specifically, ASI alleges: (i) the Agreement entitles ASI to post-termination commissions for third-party customers Delta and ASI secured during the term of the Agreement, so long as such customer contracts remain "under execution"; (ii) that the Brazil GOL Contract was executed during the Agreement term; and (iii) that Delta and Brazil GOL extended the Brazil GOL Contract as contemplated at signing of the original contract, but Delta wrongfully refused to pay ASI commissions during such extension. (Compl., ¶¶ 42-46.) These detailed factual allegations, if true, are sufficient to support a breach of contract claim.

In its Motion, Delta fails to identify any insufficiency within the factual allegations supporting ASI's breach of contract claim  ASI's Complaint.  In fact, Delta concedes that Brazil GOL was a customer secured during the Agreement term and that the GOL Contract was extended.  (Mot. 8-10.)  ASI's allegation that the Agreement entitles it to commissions during the extended term of the GOL

Contract is consistent with the terms of Agreement and thus facially plausible. For these reasons, ASI's breach of contract claim concerning the Brazil GOL commissions survives scrutiny at this stage.

### 3. ASI Properly Alleges Delta Breached Its Post-Termination Obligation to Increase the Per Engine Caps for ASI's Commissions

Contrary to Delta's position, ASI properly alleged Delta breached its duty to increase engine caps on ASI's commissions following termination of the Agreement. Delta admits it did not increase ASI's engine caps following termination, but disagrees that it had an obligation to do so. Delta claims ASI does not allege that the per engine cap provision in Exhibit B survived termination of the Agreement. (Mot. at 18.) To the contrary, ASI's Complaint incorporates by reference the entire Agreement, which includes Section 13 of the Agreement (which in turn refers to and incorporates Exhibit B of the Agreement) into the factual underpinnings of ASI's breach of contract claim. Section 13 of the Agreement specifically provides that Delta's obligations set forth in Exhibit B of the Agreement would survive termination of the Agreement. Delta's suggestion that ASI failed to allege as much, when the entire Agreement is attached to the Complaint, cannot withstand judicial scrutiny. *See* Fed. R. Civ. P. 10(c) (confirming Court may consider any documents attached to or incorporated by reference in the Complaint).

Delta also argues that the cap escalation provision is only triggered if ASI supported the underlying customer contract during the previous year. (Mot. at 19.) Delta's position is based on a misreading of the cap escalation provision in Exhibit B of the Agreement. (Mot. 17-20.) At best, Delta's Motion identifies an ambiguity in the language of the Agreement, but Delta's interpretation is not supported by the conduct of the parties throughout the term of the Agreement. As alleged in the Complaint, Delta regularly increased the caps during the term of the Agreement - these increases were based only increased rates within the underlying third-party customer contracts, not any requisite level of support from ASI.[19] (Compl., ¶¶ 48-49.) ASI anticipates discovery will confirm that cap escalations were not contingent (or conditioned) upon ASI providing support for an underlying customer contract, but rather was only conditioned upon the annual increase rate for the customer the prior year.[20] The parties' course of conduct, as determined following discovery, should inform the Court's interpretation of this provision. *See, e.g.*, *Ralls Corp.*, 27 F. Supp. 3d at 1326-1327 (denying motion to dismiss contract claim based on ambiguity in contract terms and undeveloped record).

### 4. ASI's Alleged Delta Possessed Ongoing Duty to Provide Status Reports

Delta's Motion argues for dismissal of ASI's breach of contract claim

premised upon Delta's failure to provide status reports; Delta claims ASI "failed to allege that Section 7 survived termination of the Agreement." The core of ASI's Complaint is Delta's obligations vis-a-vis ASI survived termination of the Agreement. These obligations included the duty to provide regular status reports to ASI. (*See* Agreement, §§ 4 (referencing termination of Agreement as not affecting rights and obligations arising under the Agreement prior to termination date); and 7 (referencing ASI duty to provide weekly status reports; *cf*. § 12 (expressly limiting ASI's non-compete obligation to "term of this Agreement"; such limiting language is not found in section 7 of the Agreement).

As referenced above concerning the cap escalation issue, the terms of the Agreement are expressly incorporated into the Complaint. Further, discovery will support ASI's claim for post-termination status reports. In fact, ASI's Complaint already shows that Delta agreed to provide post-termination status reports. (Compl., ¶ 34.) As ASI has alleged a facially plausible claim that ASI's duty to provide status reports survived termination of the Agreement, ASI's breach of contract claim on this basis survives scrutiny at this stage.

### C. ASI's Complaint Alleges a Cognizable Claim for Breach of Duty of Good Faith and Fair Dealing

In its Motion, Delta argues that ASI's good faith and fair dealing claim fails

for two reasons: (1) because ASI failed to "tie this allegation to a specific contract provision;" and (2) as derivative of one of ASI's breach of contract claims, "it too fails for the same reasons the breach of contract claims fail." (Mot. at 21-22.) As further explained below, both arguments fail upon closer scrutiny.

Delta's first argument against ASI's good faith and fair dealing is based on the following statement from *American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp.2d 1356, 1370 (2006):

> in order to state a claim for breach of the implied duty of good faith and fair dealing, a plaintiff must set forth facts showing a breach of an actual term of an agreement. General allegations of breach of the implied duty of good faith and fair dealing not tied to a specific contract provision are not actionable.

In *American Casual Dining*, the plaintiff, a franchisee, sued its franchisor on multiple grounds, including breach of contract and breach of the duty of good faith and fair dealing. The plaintiff's breach of contract claim, however, was premised upon generalized allegations that the franchisor failed to assist the plaintiff in opening and operating an economically viable restaurant franchise. *American Casual Dining*, 426 F. Supp. 2d at 1369. Because the plaintiff could not point to any specific contractual provision the franchisor breached, the trial court dismissed plaintiff's breach of contract claim. *Id*. at 1368. Since the plaintiff's good faith claim was premised upon the same generalized factual allegations underlying its breach of

contract claim, the court also dismissed plaintiff's good faith claim.  *Id*. at 1370-71.

Unlike the plaintiff in *American Casual Dining*, ASI, in its Complaint, references specific contractual obligations breached by Delta. (Compl., ¶¶ 51-56.) (alleging Delta breached contract by failing to: pay post-termination commissions on AMX and GOL Contracts; review and increase engine caps from 2013-2016; and provide status reports).  ASI's Complaint specifically incorporates Delta alleged contract breaches into ASI's good faith claim.  (Compl., ¶ 57.)  Moreover, ASI's Complaint identifies the specific Delta conduct which ASI contends breached the duty of good faith, i.e., failing to inform ASI of the specific terms of Delta's purported new arrangements with ASI and/or the GOL Contract extension, despite multiple requests from ASI.  (*Id.*, ¶ 58.)  When viewed through the lens of Delta's contractual obligations to provide status reports and to pay ASI commissions for third-party customer contracts so long as they remain "under execution", ASI's good faith claim is tied to specific provisions of the Agreement, as required under Georgia law.

D.     **ASI's Complaint Adequately Alleges the Elements to Support a Legal Accounting under Georgia Law.**

Delta's Motion argues that ASI's accounting claim fails for two independent reasons: (1) accounting is not an independent cause of action, and (2) ASI fails to

allege that the information it seeks is complicated or intricate. (Mot. at 22.) Regarding Delta's first argument, ASI has addressed the legal sufficiency of its breach of contract claim herein. As ASI's accounting claim incorporates and depends on a valid breach of contract claim, Delta's argument in this regard fails.

Delta's second argument is based on a narrow reading of both Georgia law and ASI's Complaint. (*Id.*) Specifically, Delta wrongly describes accounting claims as solely an equitable form of relief in Georgia. (*Id.*) The case Delta cites in support of its position, however, *Wells Fargo Bank, N.A. v. Crowley*, No. 1:13-CV-01427-CAP-LTW, 2014 WL 11370437 (N.D. Ga. Feb. 20, 2014), admits that it views Georgia law as "unclear as how a demand for accounting should be treated by the courts." *Wells Fargo Bank, N.A. v. Crowley*, 2014 WL 11370437 at *6.

Georgia state case law, however, confirms that an accounting claim can be brought in law or in equity. *See, e.g., Dorough v. Pettus,* 101 Ga. App. 797; 115 S.E.2d 440, 443-445 (Ga. App. 1960) (finding that request for accounting by plaintiff resulting from years' support claim "is clearly within the purview of the *legal* remedies granted by the State of Georgia.") (emphasis added)

Here, ASI alleges a viable claim for a legal accounting.[21] ASI alleges Delta owes commissions pursuant to the Agreement and that Delta has failed to pay the

commissions. *See Burress et al. v. Montgomery, et al.,* 148 Ga. 548; 97 S.E. 538 (Ga. 1918) (recognizing that accounting claim, arising from breach of contract claim based upon unpaid royalties, could be made in law). As a result, ASI is entitled to an accounting to determine the revenue Delta has received from AMX and Brazil GOL so that the commissions that are due ASI can be calculated.

**E.     ASI's Complaint Adequately Alleges Bad Faith to Support An Award of Litigation Expenses Under O.C.G.A. § 13-6-11**

Delta argues ASI's claim for litigation expenses should be dismissed because: (i) it is derivative of ASI's substantive claims, which Delta argues fail; and (ii) ASI purportedly does not allege any facts of bad faith, stubborn litigiousness, or unnecessary trouble or expense to support an award under O.C.G.A. § 13-6-11. (Mot. at 24.)

As explained above, Delta's substantive claims are legally sufficient and thus able to support an award of litigation under § 13-6-11. Moreover, Delta wrongly claims Paragraph 67 of ASI's Complaint is the only allegation supporting ASI's Section 13-6-11 claim. (Mot. at 24.) To the contrary to Delta's assertion, ASI's Complaint contains facts that would plausibly support an award of litigation expenses. (Compl. at ¶¶ 38, 41, 44, 46.) Specifically, ASI contends Delta's staunch refusal to provide any details concerning the AMX side arrangement and/or the

GOL extension prior to the filing of the Complaint supports a finding of bad faith. These allegations are expressly incorporated into ASI's Section 13-6-11 claim. (Compl., ¶ 66.)  ASI's allegations are plausible and sufficient to support a finding that Delta has acted in bad faith, been stubbornly litigious, and/or caused unnecessary trouble or expense.  As a result, the Court should permit the parties to conduct discovery on ASI's claim for litigation expenses.

F.      **Conclusion**

For the reasons outlined above and in the Complaint, Plaintiff ASI respectfully requests that Defendant Delta's Motion to Dismiss be denied.  In the alternative, ASI requests leave from the Court to amend its Complaint to address any pleading deficiencies identified by the Court during consideration of the Motion.

Respectfully submitted this 3rd day of March, 2017.

**TOWNSEND & LOCKETT, LLC**

_**/s/ Steven J. Pritchett**_
Steven J. Pritchett
Georgia Bar No. 142309
D. Tennell Lockett
Georgia Bar No. 455547
Travis Townsend
Georgia Bar No.715061

1401 Peachtree St., NE
Suite 500
Atlanta, Georgia 30309
(404) 870-8501 (direct dial)
(404) 870-8502 (facsimile)
steven.pritchett@townsendlockett.com

_Counsel for Plaintiff_
_AviaSupport International, Inc._

¹ ASI's Complaint was filed December 19, 2016. (Doc. 1.)  Delta's Motion was filed on February 20, 2017. (Doc. 11.)

² In support of this Response, ASI incorporates and restates the detailed factual allegations set forth in Paragraphs 1-50 of the Complaint.

³ The Agreement is attached as Exhibit 1 to the Complaint.  (Doc. 1, Ex. 1.)

⁴ The Agreement defines "Sales" as "the net amount of the invoice (after any discount") for the sale of a Service in the Territory.  (Agreement, § 6(a).)

⁵ The Agreement does not contain any incentive clauses or sale minimums.  On the contrary, ASI's commissions were directly tied to Delta's Sales to customers within the Territory.  (Agreement, §§ 6 and 13.)

⁶ For example, Exhibit B of the AMX Contract (defined below) provides for annual rate escalations for Delta's benefit.  (Compl., Ex. 6 at Ex. B.)

⁷ The AMX Contract is attached as Exhibit 6 to the Complaint.

⁸ The GOL Contract is attached as Exhibit 8 to the Complaint.

⁹ Section 13 also provides that as consideration for compensation which may be due to ASI after termination, "Delta may require that [ASI] be responsible for the continued administrative support activities of all customers from which compensation is due and for all customers from which compensation is due and for all other duties required by this Agreement as a condition of continued compensation."

¹⁰ The Separation Letter is attached as Exhibit 4 to the Complaint.

¹¹ Interestingly, the other two active contracts identified in the Separation Letter had open expiration dates.  (Separation Ltr.)

¹² Section 20 of the Agreement provided Delta the ability to issue rules, regulations, and instructions to carry out or clarify the Agreement, but in the event of any conflict or inconsistency between the Agreement and any such rules, regulations, and instruction, the provisions of the Agreement shall control.  (Agreement, § 20.)

¹³ The Response Letter is attached as Exhibit A to the Motion.  ASI urges the Court to

reject Delta's mischaracterization of the substance and import of the Response Letter.

[14] Despite multiple requests, Delta did not provide ASI any record evidencing the specific terms of the purportedly new T&M arrangement concerning the servicing of AMX engines.

[15] The final year of the initial term of the AMX Contract, was a high-volume period for Delta, which would result in higher commissions on the AMX Contract for ASI.

[16] ASI also alleges Delta failed to pay commissions for Delta's repair of AMX component parts from April 2016-expiration of the AMX Contract. (Compl., ¶ 41.) In its Motion, Delta narrowly reads this allegation as lacking the requisite allegation that Delta in fact repaired component parts. (Mot., n. 4.) At this stage, such a restrictive view of the allegations is improper.

[17] Delta's argument that ASI was not involved in the revised terms rings hollow, as it was Delta whom expressly requested that ASI cease supporting existing customers. (*See* Separation Ltr., Compl., Ex. 4.)

[18] Delta's decision to not include the terms of the purported new arrangement may have been an effort to avoid converting its Motion into a motion for summary judgment, thus underscoring the premature nature of the Motion. *See* Fed. R. Civ. P. 12(d) (requiring 12(b)(6) motion be treated as one for summary judgment if the court considers matters outside the pleadings). Such inclusion, however, would not insulate Delta from ASI's claims or change the outcome of Delta's motion.

[19] The third-party customer contracts customarily contained annual rate escalations for Delta's benefit. (AMX Contract, Ex. B.) ASI, in negotiating the annual cap increases in the Agreement, ensured that its commissions would reflect such annual increases.

[20] Since 2013, Delta has failed to provide ASI the financial information needed to establish whether commission cap escalations were justified under the Agreement.

[21] Because ASI's accounting claim is based on law rather than equity, the prerequisites for a cognizable equitable accounting claim under O.C.G.A.§ 23-2-70 are inapplicable to ASI's legal accounting claim.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **AVIASUPPORT INTERNATIONAL, INC.,** | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. File: |
| | ) 1:16-cv-04660-RWS |
| | ) |
| **DELTA AIRLINES, INC.,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## LR 7.1.D, NDGa CERTIFICATION

The undersigned counsel for AviaSupport International Inc. states and certifies that the foregoing has been prepared with one of the font and point selections approved by the court in LR 5.1B, namely Times New Romans point 14.

**TOWNSEND & LOCKETT, LLC**

_**/s/ Steven J. Pritchett**_
Steven J. Pritchett
Georgia Bar No. 142309

| | |
|---|---|
| AVIASUPPORT INTERNATIONAL, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No.File: ) 1:16-cv-04660-RWS |
| DELTA AIRLINES, INC., | ) ) |
| Defendant. | ) ) ) |

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2017, I electronically filed a true and correct copy of the foregoing PLAINTIFF AVIASUPPORT INTERNATIONAL, INC.'S REPONSE IN OPPOSITION TO DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to each attorneys of record in connection with the above-captioned case.

TOWNSEND & LOCKETT, LLC

*/s/ Steven J. Pritchett*
Steven J. Pritchett
Georgia Bar No. 142309