# EXHIBIT A

3

# KING & SPALDING

King & Spalding LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521
Tel: +1 404 572 4600
Fax: +1 404 572 5100
www.kslaw.com

Jonathan R. Chally
Direct Dial: +1 404 572 4673
Direct Fax: +1 404 572 5100
jchally@kslaw.com

March 7, 2019

**VIA EMAIL**
The Honorable Richard W. Story
Attn: Stacey Kemp, Courtroom Deputy
Stacey_Kemp@gand.uscourts.gov
United States District Court
Northern District of Georgia

> **RE: AviaSupport Int'l, Inc. v. Delta Air Lines, Inc., No. 1:16-cv-4660-RWS –
> Motion for Protective Order**

Dear Judge Story:

I write to move for a protective order related to third-party subpoenas served by Plaintiff AviaSupport International, Inc. ("Avia") on Skyview Consulting Partners ("Skyview") and Skyview's founder and Executive Director, Basil Papayoti, and subpoenas to be served on Turbine Engine Support, LLC ("TES"), and TES's President, William Metera. Skyview and TES are former third-party sales representatives of Delta Air Lines, Inc. ("Delta"). Avia's attempt to seek documents related to third-party sales representatives other than Avia has already been rejected by this Court twice, each time with the ruling that such information is irrelevant to this case.

Undeterred, Avia is now pursuing yet another means to obtain this material. Avia now seeks these documents directly from Avia's competitor third-party sales representatives. Delta moves for a protective order prohibiting this action. The subpoenas seek any and all contracts or agreements entered into by Delta and Skyview or TES, respectively, that relate to (1) Delta's provision of airline maintenance repair services and/or (2) Delta's marketing or providing consulting services concerning such maintenance. *See* Exhibit A (Notice of Issuance of Third-Party Subpoenas to Skyview and Mr. Papayoti), Exhibit B (March 4, 2019 Letter to Mr. Metera, attaching subpoenas to TES and Mr. Metera). The subpoenas to Skyview and Mr. Papayoti were served on March 1, 2019. Avia's counsel has indicated that it intends to serve the subpoenas on TES and Mr. Metera later this week. As the Court has already ruled twice before, these documents are not relevant to this case.

Under Federal Rule of Civil Procedure 26(c), a party may move for a protective order against a subpoena when the subpoena seeks irrelevant information. *See Beecher Carlson Holdings, Inc. v. Stern Risk Partners, LLC*, No. 1:15-CV-1031, 2015 WL 13333633, *6 (N.D. Ga.

DMSLIBRARY01\33919341.v7

Nov. 3, 2015) (granting defendants' motion for protective order "protecting the non-parties from responding to or otherwise producing documents in response to" portions of the subpoena requesting documents that were irrelevant); *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 303 F.R.D. 673, 678 (S.D. Fla. Dec. 3, 2014) ("[U]nder Federal Rule of Civil Procedure 26(c), a party to a lawsuit may move the Court for entry of a protective order and challenge third-party subpoenas on the basis that they seek irrelevant information."); *Armas v. Miabraz, LLC*, No. 12-CIV-20063, 2012 WL 13014668, at *1 n.2 (S.D. Fla. June 22, 2012) ("[A]lthough a party may have limited standing to quash a subpoena pursuant to Federal Rule of Civil Procedure 45, it has standing to move for a protective order under Federal Rule of Civil Procedure 26(c) if the subpoenas seek irrelevant information.").

Such is the case here, where Avia's subpoenas seek information that the Court has already ruled—on two different occasions—is irrelevant. In January 2018, Avia submitted a letter request that the Court compel production of contracts and settlement agreements entered into by Delta with other third-party sales representatives like Skyview and TES. Following the parties' submission of letter briefs, the Court held that Avia is not entitled to these documents because they are not relevant to this dispute. *See* Doc. 25 at 1–2 ("[Avia] is not entitled to the discovery it seeks . . . pertaining to Delta's relationships with third-party sales representatives who have no connection to the present case."). Later, in January 2019, Avia again sought discovery of Delta's agreements with third-party sales representatives. Delta moved for a protective order, which the Court granted on January 30, 2019, stating that Delta "is not required to produce third-party documents, except those documents on which it may intend to rely in support of its position regarding the termination of the Avia/Delta agreement." *See* Doc. 42 at 2.

The Court has correctly ruled that agreements with other third-party sales representatives are not relevant in this matter. The terms of, and circumstances regarding, Delta's relationship with other third-party sales representatives have nothing to do with the construction of the agreement between Delta and Avia and whether that agreement requires Delta to pay commissions to Avia as long as Delta TechOps services AeroMexico and GOL, as Avia contends. *Maldonado v. Unnamed Defendant*, 648 F. App'x 939, 956 (11th Cir. 2016) ("District judges have broad authority to control the scope of discovery and may deny a motion to compel discovery if the discovery sought is irrelevant." (citing Fed. R. Civ. P. 26(b))). That is true whether the documents Avia seeks are in Delta's possession or in the possession of a third party.

These documents are not only irrelevant, they are confidential and competitively sensitive. These documents reveal the unique terms of a relationship between Delta and third-party sales representatives that are in competition with Avia. Avia has no justifiable interest in receiving information that reveals the terms under which Delta is (or was) willing to do business with a competitor. The documents have no bearing on the dispute at issue in this case, and the sensitive information should not be disclosed. *See Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 531 (D. Del. 2002) (granting motion to quash subpoena served by plaintiff on nonparty competitor that sought terms of business arrangements between nonparty and defendant, citing (1) the potential harm resulting from such disclosure and (2) the limited relevancy of the information sought; noting that, when deciding motions for protective orders, "courts have traditionally recognized that disclosure to a competitor is more harmful than disclosure to a noncompetitor"); *see also Porter v. Tyco Healthcare Grp. LP*, No. 1:08-CV-1203-CC, 2008 WL

11320000, at *2 (N.D. Ga. June 11, 2008) (granting defendant's motion for a protective order based on a finding of good cause because plaintiff sought confidential commercial information in the form of documents and information pertaining to defendant's business dealings); *Williams v. Taser Int'l, Inc.*, No. CIVA1:06-CV-0051-RWS, 2006 WL 1835437, at *2 (N.D. Ga. June 30, 2006) (granting in part defendant's motion for a protective order based partially on defendant's argument that it "derives a competitive advantage in the marketplace from the proprietary information covered by Plaintiffs' discovery requests, and the disclosure of this information to competitors would cause [the defendant] significant harm").

Avia persists in its pursuit of documents that this Court has already ruled are irrelevant to this case. This issue has been decided twice before, and Avia should not be allowed to focus further discovery efforts on a search for plainly irrelevant information. In accordance with the Court's prior rulings, Delta requests that the Court issue a protective order against Avia's subpoenas to Skyview, Mr. Papayoti, TES, and Mr. Metera and rule that Avia cannot obtain material from a third party when the Court has already held that the material cannot be obtained from Delta.

Thank you for your attention to these issues.

Sincerely,

/s/ Jonathan R. Chally



**Steven J. Pritchett**
(404) 870-8501 Main
(404) 870-8504 Direct
steven.pritchett@townsendlockett.com

March 12, 2019

**VIA ELECTRONIC MAIL**
The Honorable Richard W. Story
Attn: Stacey Kemp, Courtroom Deputy
Stacey_Kemp@gand.uscourts.gov
United States District Court
Northern District of Georgia

Re: **AviaSupport International, Inc. ("ASI") v. Delta Air Lines, Inc. ("Delta")**
    **Civil Action No. 1:16-cv-04660-RWS**
    **Delta Air Lines, Inc.'s Motion for Protective Order**

Dear Judge Story:

Kindly accept this letter in response to Delta Air Lines, Inc.'s ("Delta") March 7, 2019 letter requesting a protective order to prevent AviaSupport International, Inc. ("ASI") from obtaining relevant sales and termination agreements from two nonparties (TES and Skyview) who, like ASI, formerly served as third-party sales representatives for Delta (the "Subpoenaed Documents"). In its request, Delta seeks to thwart ASI's efforts to discover the Subpoenaed Documents through narrowly-tailored nonparty subpoenas, which impose no burden on Delta. Namely, each of the nonparty subpoenas of which Delta complains contains only a single request: the production of air maintenance repair services agreements (and termination agreements related thereto) which ASI has now confirmed touch on the interpretation of the 2004 Delta-ASI agreement ("Agreement") central to this action.[1] Respectfully, your Honor should deny Delta's request for a protective order because Delta does not have standing to raise its objection and, even if it somehow did, it cannot establish that "good cause" for the protective order exists.

**Delta Lacks Standing**. Delta's March 7 letter glosses past the standing issue for good reason. As a general principle, a party may not move for an order to protect the rights of a nonparty witness if that witness does not claim protection for himself. 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2035 (2018); *see also Stevenson v. Stanley Bostitch, Inc.*, 201 FRD 551, 555 n.3

---

[1] Counsel for ASI previously had one third-party sales contract in its possession and TES, one of the subpoenaed nonparties, has now produced its sales contract to ASI. While the third-party agreements available to ASI are similar to ASI's in many respects, the provisions relating to post-termination commissions starkly contrast with ASI's and make clear the Subpoenaed Documents are directly relevant and highly probative of ASI's central theory of the case (and Delta's dispute thereof), namely that ASI specifically negotiated for post-termination commissions so long as pre-termination customers continue ongoing relationships with Delta.

1

(N.D. Ga. 2001); *Perry v. Comm. Action Svcs.*, 82 F. Supp. 2d 892, 898 (N.D. Ill. 2000) (noting it was "doubtful that [plaintiff] ha[d] standing to move for a protective order on behalf of a non-party witness"). As Delta suggests, some courts have distinguished the protective mechanisms of Rule 45 and Rule 26, determining that Rule 26 provides an alternative basis for a party to seek protection from a nonparty subpoena. (*See* Delta's March 7 Ltr. at 2.) As Delta implicitly concedes, however, the line of cases it relies on only extends standing under Rule 26(c) where the subpoena "*seeks irrelevant information*." *Id.* Consequently, Delta may not challenge ASI's subpoenas where the subpoenas seek relevant information.

## The Subpoenaed Documents Are Relevant to the Interpretation and Termination of the Agreement.

There is little legitimate dispute that ASI's narrowly-tailored subpoenas seek relevant information. Even after the amendments to the Federal Rules, discovery maintains its traditional broad scope. *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. Dec. 18, 2013) ("[t]he Federal Rules of Civil Procedure strongly favor full discovery whenever possible"); *Blackrock Allocation Target Shares, Series S Portfolio v. The Bank of New York Mellon*, 14 Civ. 9372 (GBD) (HBP), 2018 WL 2215510 at *6 (S.D.N.Y. May 14, 2018) ("'[r]elevance has been broadly interpreted to include 'any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case'[.]"), *quoting Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

As noted above, ASI's subpoenas are directed to two former Delta third-party sales representatives, TES and Skyview, that provided services to Delta identical to the services ASI provided to Delta and during the same time-frame. The Subpoenaed Documents are air maintenance repair services agreements (and related termination agreements) between these sales representatives and Delta. Moreover, ASI did not blindly subpoena any and all former third-party sales representatives for Delta, but rather specifically targeted TES and Skyview as uniquely possessing relevant information. Skyview's principal, a former Delta employee, negotiated a 2002 ASI-Delta agreement on Delta's behalf. The TES-Delta Agreement was negotiated four months before Delta and ASI executed the 2007 amendment to the Agreement.

At a minimum, the Subpoenaed Documents are designed to elicit information upon which ASI may rely in support of its position regarding the interpretation and termination of the Agreement. Moreover, the Subpoenaed Documents will provide information as to whether the operative provisions of the Agreement are boilerplate Delta provisions or unique to the Delta-ASI relationship, and therefore further touch on the interpretation of the Delta-ASI agreement. Such agreements are relevant under both pre- and post-amendment interpretations of the Federal Rules. *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 364-65 (S.D.N.Y. 2010)(finding that information regarding other contracts, statements of work, and manuals utilized in transactions with other contractors was relevant since it could further the interpretation of the parties' contract); *Bertrand v. Yale Univ.*, No. 3:15-cv-1128, 2016 WL 2743489 (D. Conn., May 11, 2016) (under "newly revised" F.R.C.P., requested third-party discovery, encompassing third-party agreements, is relevant to interpretation of plaintiff's contractual agreement with defendant, and therefore discoverable). Since Delta's request for protection rises and falls on the issue of relevance, its request fails.

Delta's insistence that this Court has previously ruled that the Subpoenaed Documents are "not relevant to this matter" either fundamentally misunderstands the procedures established by the Federal Rules or is disingenuous. First, none of the Court's prior rulings include a finding that the Subpoenaed Documents are irrelevant. *See* Dkt. No. 25, 1/19/18 Order ("Plaintiff is not entitled to the discovery it seeks"); Dkt. No. 42, 1/20/19 Order (Defendant not required to produce third-party documents, except those on which it may rely). Plainly, a ruling that a party is not entitled to discovery is not synonymous with a ruling that the discovery sought is irrelevant.

Moreover, the Court's comments during the party's January 30 telephonic hearing confirms ASI's

observation. During the teleconference, Judge Story clarified his concern with ASI obtaining the Subpoenaed Documents from Delta: "one of the things that under the new rules we're attempting to do is to be sure that discovery is reasonable and proportionate and that these not turn into fishing expeditions and this is essentially let's see every third-party agreement you had so that we can see if that helps our case." Ex. A, pg. 12. Judge Story's comment implicitly recognizes that "a party requesting discovery may not be entitled, '*under the rules of proportionality*, to every single [*relevant*] document.'" *Blackrock Allocation Target Shares*, 2018 WL 2215510 at *7 (emphasis added). Judge Story's comment accurately reflects that relevance is a key step, but not the only step in assessing discoverability. "Even when the requested documents are relevant, Federal Rule of Civil Procedure 26(b)(1) and (2) provide courts with 'significant flexibility and discretion to assess the circumstances of the case and limit discovery accordingly to ensure that the scope and duration of discovery is reasonably proportional to the value of the requested information, the needs of the case and the parties' resources.'" *Id.* As ASI's subpoenas are both narrowly tailored and not directed to Delta, Delta's March 7 letter carefully avoids any discussion of the proportionality element of discoverability. But any feasible Delta argument concerning proportionality would not suffice to permit Delta to interfere with ASI's subpoenas.[2]

**<u>Delta Cannot Establish Good Cause</u>**. Even if Delta had standing to seek protection from ASI's subpoenas (it does not), it still must establish "good cause." Fed. R. Civ. P. 26(c). Delta makes two arguments on this point: 1) Delta argues the information sought is irrelevant; and 2) Delta argues the Subpoenaed Documents are confidential and competitively sensitive. As discussed above, Delta's relevancy argument fails.

Delta's second argument, that ASI should not have access to the Subpoenaed Documents — two sets of which are already in ASI's possession — because they are confidential and competitively sensitive makes little sense in light of the heavily negotiated, two-tier protective order already entered in this action. (Dkt. No. 35.) Any legitimate confidentiality concern is simply remedied by designating and treating any produced documents ATTORNEY'S EYES ONLY ("AEO") under the existing protective order. ASI has already confirmed with Delta that it will treat the Subpoenaed Documents as AEO. Moreover, as Delta is well-aware, its assertion that ASI and the subpoenaed nonparties are competitors is false. First, neither ASI nor any of the third-parties service Delta under their service contracts any longer. Second, even when ASI's and the nonparties' services were under contract with Delta, they were not competitors. Indeed, ASI, TES, and Skyview worked contemporaneously *alongside* one another to grow Delta's MRO business worldwide, with each sales representative servicing different, non-overlapping geographic territories.

In addition to other reasons discussed herein, because Delta cannot show "good cause" for entry of a protective order, its request must be denied as a matter of law.

---

[2] Although not required to resolve the standing issue here, it is worth noting the Court's prior proportionality concerns are alleviated by the nonparty subpoenas, and in fact favor ASI's discovery. ASI's subpoenas place no additional burden on Delta. ASI's subpoenas are narrowly tailored and thoughtfully drafted to capture the relevant agreements from TES and Skyview. The Court need not guess as to the burden that ASI's subpoenas place on the various nonparties as TES (served on March 5) quickly produced to ASI the subpoenaed Delta-TES agreements. ASI cannot conceive of stronger evidence that its subpoenas place very little burden on the nonparties, and no burden at all upon Delta. ASI's subpoenas are not a fishing expedition to create additional claims against Delta or to see if unknown documents "help our case." Based on the documents currently in our possession, ASI already knows the Subpoenaed Documents help its case. Via the challenged subpoenas, ASI is simply requesting access to these relevant documents.

Very truly yours,

**TOWNSEND & LOCKETT, LLC**

Steven J. Pritchett

SJP:sjp

Enclosure

cc:    Jonathan R. Chally, Esq.
       Kathleen B. Gilchrist, Esq.
       D. Tennell Lockett, Esq.

From: "Chally, Jon" <JChally@KSLAW.com>
To: Steven Pritchett <steven.pritchett@townsendlockett.com>, "Stacey_Kemp@gand.uscourts.gov"
<Stacey_Kemp@gand.uscourts.gov>
Cc: "Gilchrist, Kate" <KGilchrist@KSLAW.com>, Tennell Lockett <tennell.lockett@townsendlockett.com>
Date: 03/14/2019 11:29 AM
Subject: RE: AviaSupport International, Inc. v. Delta Air Lines, Inc. - Case No. 1:16-cv-04660 - Unopposed Request
for Extension of Time

Ms. Kemp:

Good morning. I represent Delta Air Lines, Inc. ("Delta") in this case. We were surprised to see footnote 1 of Mr. Pritchett's response letter, where he indicates that one of the subpoena recipients at issue in Delta's request for a protective order (Turbine Engine Support, LLC ("TES")) has already produced information to Plaintiff in response to the subpoena Mr. Pritchett served. We were not aware that TES had been served with the subpoena, let alone provided information in response to it, until Mr. Pritchett's letter. Even though Mr. Pritchett had not previously notified Delta of this production, Mr. Pritchett suggests that this production supports Avia's position in this discovery dispute. Specifically, Mr. Pritchett contends that this production indicates that there is no burden to subpoena recipients associated with production of the information Avia seeks. This is largely inaccurate and, in any event, beside the point.

We now understand that Avia has at least attempted to serve subpoenas on several of Delta's former third-party sales representatives, including: (1) SkyView Consulting Partners, (2) Basil Papayoti (SkyView's founder and Executive Director), (3) TES, and (4) William Metera (TES's President). All of these subpoenas were sent for service without prior notice to Delta. With respect to TES and Mr. Metera, Avia notified Delta of these subpoenas after they were sent to Arizona for service. As soon as Delta became aware that Avia had sent subpoenas for service, Delta took steps to raise its concerns regarding the subpoena with Avia's counsel and with the Court. Particularly in light of those concerns -- and the fact that similar issues had been litigated and resolved in Delta's favor previously -- we were surprised that Avia would begin pursuit of information from these subpoena recipients without informing Delta. Rule 45 of the Federal Rules, of course, requires that Avia provide notice to Delta of these subpoenas "before [they are] served on the person to whom [they are] directed," a requirement that is designed to "allow opposing parties to object prior to service and move to quash or for a protective order." 9A Fed. Prac. & Proc. Civ. § 2454 (3d ed.). By sending these subpoenas out for service in advance of informing Delta, Avia has flouted the purpose for this rule.

Even if Avia provided notice to Delta before service -- but after steps to achieve service had been taken -- Avia's attempt to limit the time within which Delta could object to these subpoenas has frustrated Delta's ability to present this issue before subpoena recipients are required to respond. Avia should not benefit from its strategic attempt to eliminate the opportunity for Delta to assert objections to Avia's discovery efforts.

Perhaps more significantly, Delta's objection to these subpoenas is not based on burden, at least not a contention that the subpoenas require production of extensive information. Rather, as Delta previously explained, its objection to these subpoenas is based on (1) the fact that the Court has twice ruled that this information need not be produced in this case because it is not relevant to the dispute and (2) Delta's legitimate concerns regarding Avia obtaining confidential information from a different Delta contracting partner regarding Delta's relationship with that contracting party. Limiting the subpoenas

to documents that may be readily identified does not resolve that objection.

Thank you for your attention to this matter.

From:    Steven Pritchett <steven.pritchett@townsendlockett.com>
To:      Stacey_kemp@gand.uscourts.gov
Cc:      jchally@kslaw.com, "Gilchrist, Kate" <kgilchrist@kslaw.com>, Tennell Lockett
<tennell.lockett@townsendlockett.com>
Date:    03/18/2019 07:20 PM
Subject: Re: AviaSupport International, Inc. v. Delta Air Lines, Inc. - Case No. 1:16-cv-04660 - Unopposed Request
for Extension of Time

Ms. Kemp,

Please accept this email in response to Mr. Chally's March 14 email
("Email").  In an attempt to achieve a strategic advantage in
connection with the pending discovery dispute, Mr. Chally's Email
distorts the relevant facts and the conduct of ASI's counsel.  In this
response, ASI seeks to clarify the relevant facts and confirm its
counsel has acted in good-faith and fully in accordance with the
Federal Rules.

First, in the Email, Delta's counsel claims ASI served subpoenas on
"several" of Delta's former third-party sales representatives. To be
clear, ASI has served subpoenas on two former third-party sales
representatives - TES and and Skyview -  and served
identical/corresponding subpoenas to the principals of TES and
Skyview.

Second, Delta claims that ASI's subpoenas were sent for service
without prior notice to Delta.  This is untrue.  As further described
below, ASI's counsel notified Delta of the subpoenas prior to any
service attempts on TES and/or Skyview.  In so doing, ASI complied
with both the letter and the spirit of Rule 45.

Skyview/Papayoti Subpoena ("Skyview Subpoena"): On February 25, ASI's
counsel notified Delta's counsel that the Skyview Subpoena was being
served.  ASI achieved service on Skyview until March 1.

TES/Metera ("TES Subpoena"): On March 4, ASI's counsel notified
Delta's counsel that the TES Subpoena was being served.  Service was
effectuated upon TES/Metera on March 5.

Both the Skyview and TES Subpoenas sought production of the requested
contracts on Friday, March 15, well after ASI notifed Delta of the
Subpoenas.

Rule 45(a)(4) requires that a subpoenaing party (when requesting
records and/or inspection) provide notice and a copy of a subpoena to
any other party "before it is served on the person to whom it is
directed."  Rule 45(a)(4) does not require a specific amount of
advance notice to other parties prior to service of a subpoena. The
Federal Rules expressly provides for specific notice requirements when
it intends to do so.  See, e.g., Fed. R. Civ. P. 6(c)(1) and 27(a)(2)
(requiring 14 and 21-day notice to parties, respectively, prior to
hearing dates). Delta, in the Email, attempts to import additional
requirements into Rule 45(a)(4) without any textual basis for doing
so.

In addition to complying with the letter of Rule 45(a)(4), the timing
of ASI's notice to Delta was also in good faith.  ASI's notice
provided Delta time to mount its objections well before March 15, the
anticipated production date for the Subpoenas.  The fact that TES

provided its response prior to the production date (and during the pendency of this discovery dispute) is not evidence of any bad-faith, or violation of Rule 45(a)(4), by ASI or its counsel.

Third, according to the Email, Delta has conceded that burden is not a concern with the TES and Skyview Subpoenas. But Delta continues to challenge discoverability of the subpoenaed agreements on relevancy grounds, while ignoring the fact that relevancy is not considered in a vacuum, but rather in proportion to any burden imposed on a responding party. Absent any significant burden, and considering ASI intends to rely on the subpoenaed agreements in support of its position regarding the interpretation and termination of the Agreement, the Court should confirm the likely benefit of the TES and Skyview Subpoenas outweigh any burden or expense on Delta, TES, and/or Skyview. Fed. R. Civ. P. 26(b)(1).

Finally, Delta's confidentiality concerns are fully addressed by ASI's assurances that it will treat the productions from TES and Skyview as Attorney's Eyes Only under the existing protective order.

For the reasons stated herein and in the undersigned's March 12 letter to the Court, ASI respectfully requests that the Court deny Delta's request for a protective order concerning the TES and Skyview Subpoenas. Again, thank you for your ongoing attention to this matter.

Best regards,


Steven J. Pritchett, Esq.
Townsend & Lockett, LLC
(404) 870-8504 (office)
(404) 803-2372 (mobile)
steven.pritchett@townsendlockett.com